DECISION
Plaintiffs appeal from Defendant's determination upholding Notices of Deficiency for tax years 2006 and 2007. This court decided this case on Defendant's Motion for Summary Judgment. Plaintiffs were represented by Thomas K. Rackerby, Certified Public Accountant. Defendant was represented by Peggy Ellis, Tax Auditor.
 I. STATEMENT OF FACTS
Plaintiffs own rental properties that qualify for depreciation deductions under federal and Oregon law. (Ptfs' Compl at 4-5.) Those properties are ordinarily depreciable on the 39-year schedule applicable to buildings. (Id. at 5.) In order to distinguish the buildings from their related "tangible personal property," such as equipment, furniture, and fixtures, which qualify for depreciation deductions on an accelerated schedule of between five to seven years, Plaintiffs prepared a cost-segregation analysis of their properties. (Id.) Although Plaintiffs had no special experience in applying the cost-segregation methodology, they believed that their analysis was proper because it followed the "`rule of thumb' approach," which is based upon "a preparer's `experience' in a particular industry." (Id.) Plaintiffs used the results of their cost-segregation analysis as the grounds for including accelerated depreciation deductions in their 2004 return. *Page 2 
(Ptfs' Mem at 1.) Plaintiffs carried forward some of those accelerated depreciation deductions to the tax years at issue in this case, 2006 and 2007. (Id.)
On August 4, 2009, and August 6, 2009, Defendant sent Plaintiffs Notices of Deficiency (Notices) for tax years 2006 and 2007 respectively. (Ptfs' Compl at 3.) Plaintiffs' deficiencies for those tax years arose from Defendant's denial of Plaintiffs' 2004 cost-segregation analysis, and Defendant's consequent disallowance of Plaintiffs' accelerated depreciation deductions. (Id.) After having a formal administrative telephone conference with Plaintiffs as provided in ORS 305.265 and the corresponding administrative rule, Defendant upheld its denial of Plaintiffs' cost-segregation analysis in a letter dated March 2, 2010, explaining that the "rule of thumb" approach that Plaintiffs used "should [be] view[ed by the Department of Revenue] with caution, since it lacks sufficient documentation to support its allocation of costs[,]" and that Plaintiffs failed to substantiate their costs or prepare a timely analysis. (Id. at 6-8.)
Plaintiffs timely appealed from Defendant's March 2, 2010, determination to this court on May 20, 2010. (Id. at 1.) Plaintiffs request that this court uphold their depreciation deductions for tax years 2006 and 2007 and recognize their cost-segregation analysis prepared in 2004. (Id.) Ptfs' Mem at 1.) Plaintiffs do not argue that they properly prepared their 2004 cost-segregation analysis; rather, they argue that the 2004 tax year is closed to Defendant's review under the statute of limitations. (Ptfs' Mem at 1.) Defendant requests that this court uphold its March 2, 2010, determination. (Def's Ans at 1.)
 II. ANALYSIS
The issue before this court is whether Defendant may examine a tax year closed to assessment under the three year statute of limitations provided in ORS 314.410, [1] in order to *Page 3 
recalculate a depreciation deduction that Plaintiffs carried forward to tax years open to review and adjustment.
ORS 314.410(1) provides that "[a]t any time within three years after the return was filed, the Department of Revenue may give notice of deficiency * * *" to the taxpayer. The parties do not dispute the fact that Defendant gave Plaintiffs the Notices in this case more than three years after Plaintiffs filed their 2004 return. Nor do they dispute the timeliness of the issuance of the Notices for the tax years under appeal — 2006 and 2007 — under the statutory three year window.
Instead, Plaintiffs argue that Defendant cannot examine a closed year (2004) to determine the amount of a deduction available in open years (2006 and 2007). In support of their position, Plaintiffs cite in their memorandum filed November 19, 2010, a passage from Internal Revenue Service (IRS) Publication 551 pertaining to subdivision lot basis-calculation errors:
 "If you made a mistake in figuring the cost basis of subdivided lots sold in previous years, you cannot correct the mistake for years for which the statute of limitations (generally 3 tax years) has expired. Figure the basis of any remaining lots by allocating the correct original cost basis of the entire tract among the original lots."
Plaintiffs believe that these instructions are "directly on point as to the taxpayers' situation." (Ptf's Mem at 1.) Their reply to Defendant's brief reaffirms that same position and adds no arguments based on other sources. (Ptf s Reply at 1.) This court rejects Plaintiffs' argument for two reasons. First, IRS Publications are not "binding legal authority."[2] Stengel v. C.I.R., 996 F2d 1227 WL 217068 at *2 (9th Cir 1993). Second, and more importantly, the excerpted language from IRS Publication 551 does not support the proposition asserted by Plaintiffs. In fact, it supports the action taken by Defendant. While the guidance in the publication prohibits correcting a mistake for an *Page 4 
earlier year after the expiration of the statute of limitations (which, in the example in Publication 551 following the language quoted by Plaintiffs, precludes a recalculation of the allocated cost basis of lots sold by the taxpayer, where that erroneously calculated basis was used to calculate the gain on the sale of those lots), it allows a taxpayer to go back and "recalculate" the basis of the remaining unsold lots using the newly determined higher cost basis ($22,500 versus an original taxpayer basis determination of $15,000) for the purposes of reporting the recognized gain when those lots sell. In that example, the future sales of the remaining lots would appear on returns that were open for examination and adjustment by the IRS.
In the instant case, Plaintiffs' 2004 cost segregation established the basis for their continued reporting of depreciation in 2006 and 2007. Defendant is not attempting to go back and adjust Plaintiffs' 2004 return, but simply trying to adjust their returns for 2006 and 2007 by denying Plaintiffs' accelerated depreciation.
Defendant argues that although it cannot assess deficiencies in a closed year, it can use information from a closed year to make adjustments to an open year. Defendant supports its argument with two cases decided by this court and a United States Tax Court case. (Def's Trial Mem at 1.)
The first case that Defendant cites is Int'l Health LifeIns. Co. v. Dept. of Rev. (Int'l Health), 5 OTR 320 (1973). In that case, the Department of Revenue made adjustments to a closed year in order to recalculate a net operating loss that the taxpayer carried forward into an open year. Id. at 323. This court held that "[the taxpayer's] records [from a closed year] are open to examination and to the necessary tax accounting required to develop mathematical calculations for [an open year]." Id. at 329. Int'l *Page 5 Health cites a federal case and revenue ruling in support of its holding. Id. The federal case, Springfield Street Ry. Co. v.United States (Springfield Street), 312 F2d 754 (Ct Cl 1963), granted the IRS permission to examine a closed year to recalculate the amount of a net operating loss carried back from an open year. Id.;Springfield Street, 312 F2d at 754-55. The revenue ruling cited by Defendant allowed the IRS to do the same in another case involving a net operating loss carryback. Rev Rul 56-285 (1956).
Secondly, Defendant cites Tektronix, Inc. v. Dept. of Rev.,16 OTR 338, 347 (2001), for the proposition that Defendant "is permitted to examine the facts in the [closed] years to determine how those facts affected the taxes owed in the [open] years." (Def's Trial Mem at 1.) Finally, Defendant cites Mennuto v. Comm'r (Mennuto),56 TC 910, 923 (1972) to show that "it is proper, in determining a deficiency for an open year, [for Defendant] to recalculate the amount of a net operating loss carryover from a barred year." (Id.) Defendant cites Mennuto as authority under ORS 316.048, which equates a taxpayer's Oregon taxable income with his or her federal taxable income determined under federal law.
Although none of the above cases apply Defendant's principle to passive-loss carry forwards, those cases support Defendant's assertion that while it cannot adjust a closed year, the Department of Revenue can use information from a closed year to make adjustments to an open year.Int'l Health, the first Oregon case to apply that principle, appears to have been distinguished only by Smurfit NewsprintCorp. v. Dept. of Rev. (Smurfit), 329 Or 591, 997 P2d 185 (2000). InSmurfit, the Department of Revenue returned to a closed year to "recalculate" a tax credit available only under ORS 315.304.Id. at 593. The Oregon Supreme Court held that the Department of Revenue had no *Page 6 
authority to recalculate that credit in a closed year.Id. at 597-98. The court reasoned that because ORS Chapter 315 has special rules of construction under ORS 315.004, the federal law (such as that cited in Int'I Health) that allowed the Department of Revenue to recalculate amounts in a closed year did not apply.[3]Id.
In summary, Smurfit precludes Defendant from examining a tax amount in a closed year when that amount arises solely from ORS Chapter 315. Because the depreciation deductions in this case arise from federal law (IRC 469(b), [4] et seq.[5]), the Smurfit
distinction does not apply. Therefore, under the precedent outlined above, the court concludes Defendant may examine a closed year to adjust Plaintiffs' depreciation deductions in open years.
This court notes in closing that Plaintiffs, in their summary judgment memoranda, attempted to raise an issue regarding a "depreciation" deduction for mileage travelled by automobile, which this court understands as a business expense. (Ptf s Mem at 1; Ptf s Reply at 2); IRC 162(a)(2). Because Plaintiffs did not raise that issue in their original Complaint or seek to properly amend their Complaint accordingly, that issue is not before this court. Even if the issue was before the court, the Plaintiffs would not prevail. Internal Revenue Code section 274(d) specifically states that no deduction will be allowed for listed property "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's *Page 7 
own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * * (C) the business purpose of the expense * * *." The burden of proof — a preponderance of the evidence — falls upon the party seeking affirmative relief. ORS 305.427 (2009).
Plaintiffs failed to satisfy their burden of proof in regards to accelerated depreciation through cost segregation. The IRS issued an Audit Technique Guide (ATG) to help guide their examiners when they encounter a return that uses cost segregated items for depreciation. The ATG instructs examiners to view the "rule of thumb" approach used by Plaintiffs with caution because the results are "based on a preparer's `experience' in a particular industry" and "[lack] sufficient documentation to support its allocation of project costs." IRS Cost Segregation ATG, Chapter 3 (2008), available at
http://www.irs.gov/businesses/article/0,,id=135052,00.html. Chapter three of the ATG states in part:
 "Despite the lack of specific requirements for preparing cost segregation studies, taxpayers still must substantiate their depreciation deductions and classifications of property. Substantiation using actual costs is generally preferable to the use of estimates. However, in situations where estimation is the only option, the methodology and the source of any cost data should be clearly documented. In addition, estimated costs should be reconciled back to actual costs or purchase price."
Id.
A "quality" cost segregation study is "both accurate and well documented[.]" Id. A taxpayer's estimated assumptions, based on guesses without supporting records, cannot form the basis for acknowledgement of a plaintiff s claim. Boddie-Noell Enterprises,Inc. v. United States, 36 Fed Cl 722, 741 (1996), qff'd,132 F2d 54 (Fed Cir 1997); L.W. Hardy Co. v. United States,1 Cl Ct 465, 470-71 (1982). The thirteen principal elements of a quality study include:
 "1. Preparation By An Individual With Expertise And Experience
 2. Detailed Description Of The Methodology *Page 8 
 3. Use Of Appropriate Documentation
 4. Interviews Conducted With Appropriate Parties
 5. Use Of A Common Nomenclature
 6. Use Of A Standard Numbering System
 7. Explanation Of The Legal Analysis
 8. Determination Of Unit Costs And Engineering (Take-Offs)
 9. Organization Of Assets Into Lists Or Groups
 10. Reconciliation Of Total Allocated Costs To Total Actual Costs
 11. Explanation Of The Treatment Of Indirect Costs
 12. Identification And Listing Of Section 1245 Property
 13. Consideration Of Related Aspects (e.g., IRC § 263A, Change In Accounting Method And Sampling Techniques)[.]"
ATG at Chapter 4.
In the instant case, Plaintiffs used a "written inventory" to allocate values to fixtures and cabinets. Plaintiffs did not substantiate their cost allocation using actual costs. Instead, they merely used their own estimations or assumptions with no supporting records. In doing so, Plaintiffs failed to clearly document the methodology and the source of any cost data. As such, Plaintiffs did not prove by the preponderance of the evidence that their cost segregation was appropriate.
 III. CONCLUSION
Defendant may examine tax year 2004, a closed tax year, to recalculate Plaintiffs' depreciation deductions in open tax years 2006 and 2007. Defendant did so and adjusted Plaintiffs' 2006 and 2007 depreciation deductions. Plaintiffs have not persuaded the court by a preponderance of the evidence that their depreciation methodology is correct. Accordingly, Defendant's adjustments are upheld. Now, therefore, *Page 9 
IT IS THE DECISION OF THIS COURT that Defendant's Notices for tax years 2006 and 2007 are upheld; and
IT IS FURTHER DECIDED that Plaintiffs' appeal is denied.
Dated this ___day of October 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinsonon October 31, 2011. The Court filed and entered this documenton October 31, 2011.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.
[2] Even if IRS Publication 551 were a legal authority, it would likely be irrelevant to this case because the Publication's language is directed to "you," which presumably means the taxpayer, not the revenue agency.
[3] ORS 315.004(2)(a) provides that "[f]or purposes of [ORS Chapter 315], any term has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless * * * the term is specifically defined for purposes of construing, interpreting and applying the credit." The Smurfit
court reasoned that "[f]ederal law does not provide a tax credit for pollution control facilities. Accordingly, there is no `comparable context' in federal law that is relevant to the interpretation of ORS 315.304." Smurfit, 329 Or at 598.
[4] All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2006.
[5] IRC 469(b) provides for carryforwards of passive losses such as depreciation deductions; IRC 1245 provides for the accelerated depreciation deductions at issue in this case; IRC 1250 provides for depreciation deductions to properties such as Plaintiffs' buildings (section 1250 property). *Page 1